UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAHA YUKSEK,<br><br>                Petitioner,<br>     v.<br><br>PAMELA BONDI et al.,<br><br>                Respondents. | CASE NO. 2:25-cv-02555-DGE-GJL<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is Petitioner Taha Yuksek's petition for writ of habeas corpus. (Dkt. No. 1.) Having reviewed the petition, the return memorandum (Dkt. No. 11), the response (Dkt. No. 14), and all supporting materials, the Court GRANTS Petitioner's writ of habeas corpus.

**I.    BACKGROUND**

**A.  Factual Background**

Petitioner is currently detained by the United States Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. No. 1 at 2–3.) Petitioner, a native and citizen of Türkiye, entered the United States on or around

December 12, 2024, where he was subsequently detained by Border Patrol agents. (Dkt. No. 12 at 1–2.) On January 5, 2025, Petitioner claimed fear of return to Türkiye,[1] and his case was referred to the United States Citizenship and Immigration Services ("USCIS") for a credible fear interview. (Dkt. No. 12 at 2.) Petitioner was transferred to NWIPC on January 7, 2025. (*Id.*) On February 22, 2025, USCIS informed Enforcement and Removal Operations ("ERO") it had made a positive credible fear finding. (*Id.*) On February 28, 2025, Petitioner was issued a Notice to Appear, charging him as removeable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). (*Id.*)[2]

On March 24, 2025, Petitioner filed an application for relief with the immigration court. (*Id.*) On May 28, 2025, the immigration judge found Petitioner inadmissible under 8 U.S.C. 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I), denied Petitioner's request for asylum, ordered him removed to Türkiye, but granted him withholding of removal by finding a more likely than not chance that Petitioner would face persecution or torture in Türkiye. (*Id.*; Dkt. Nos. 1 at 6; 13-3 at 2–5.) A declaration submitted by Gabriel Arambula, an ICE deportation officer, stated that on November 3, 2025, ERO Tacoma spoke with Petitioner about third country removal and Petitioner "refused to cooperate in naming another country of removal." (Dkt. No. 12 at 2.) On December 19, 2025, ERO Tacoma sent the consulates of Costa Rica, Panama, and Australia a Request for Acceptance of Noncitizen. (*Id.* at 3.) At the time Officer Arambula submitted his declaration, the Requests for Acceptance remain pending. (*Id.*; Dkt. No. 11 at 9.) Respondents have provided no further updates regarding removal efforts.

---

[1] Petitioner fled Türkiye because "he had been detained and his life was threatened as a result of his Kurdish identity and support of the People's Democratic Party ("HDP"), a Turkish political party mainly representing ethnic minorities in [Türkiye], especially Kurds." (Dkt. No. 1 at 6.)

[2] The Notice to Appear identifies these sections as §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). INA § 212 is codified at 8 U.S.C. §1182.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

Respondents' current removal policy, based on a July 9, 2025 memorandum, allows for removal to a third country "if the State Department confirms it has received diplomatic assurances that individuals will not be persecuted or tortured." (Dkt. No. 1 at 13.) ICE in its discretion may reopen removal proceedings if USCIS determines that a person is eligible for withholding of removal and protection under the Convention Against Torture Act. (*Id*. at 13–14.) A USCIS screening interview will be provided only if a person affirmatively states they have a fear of persecution or torture within 24 hours of being notified of the country of removal. (*Id*.) The USCIS screening interview will normally occur within 24 hours after a person has expressed a fear of persecution. (*Id*. at 14.) Thus, a noncitizen has 24 hours to evaluate and determine whether they face harm if removed to a third country, and then 24 additional hours to collect and present evidence supporting their position.[3]

**B. Procedural Background**

On December 12, 2025, Petitioner filed a writ of habeas corpus, motion to appoint counsel, and an unopposed motion for expedited briefing schedule. (Dkt. Nos. 1–3.) On December 15, 2025, the Court appointed the Federal Public Defender to represent Petitioner and granted the motion for expedited briefing schedule. (Dkt. Nos. 6, 7.) Respondents filed a return memorandum on December 29, 2025. (Dkt. No. 11.) Petitioner filed a reply on December 31, 2025. (Dkt. No. 14.)

## I     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To

---

[3] However, in "'exigent circumstances, [ICE] may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal.'" (Dkt. No. 1 at 13.)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

      8 U.S.C. § 1231 governs the post-removal order detention of noncitizens. The statute mandates detention during the 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). After the removal period expires, ICE may either continue detention or release the noncitizen under supervision for persons found removable under 8 U.S.C. § 1182. 8 U.S.C. § 1231(a)(3), (a)(6). Although this provision authorizes continued detention, it does not permit "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). As the *Zadvydas* court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–722 (W.D. Wash. 2025) (rejecting argument that detention period resets every time a noncitizen is detained); *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025) ("When calculating time spent in detention, courts aggregate nonconsecutive detention periods. The clock does not restart each time that a nonconsecutive detention begins for a noncitizen."); *Sied v. Nelson*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases).

## II   ANALYSIS

Petitioner's claims fall within three categories: (1) his continued detention violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution; (2) third country removal without meaningful notice and opportunity to respond violates the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA"), implementing regulations, the Convention Against Torture, and the Administrative Procedure Act; and (3) the third country removal program imposes punishment without a criminal trial, in violation of the Fifth and Eighth Amendments. (Dkt. No. 1 at 15–18.)

### A. Petitioner's Detention Violates the Fifth Amendment Due Process Clause

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]"

*Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

        1. Petitioner has met his burden under *Zadvydas*

Petitioner provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. First, Petitioner has already been detained for more than six months. Since his final order of removal, Petitioner has been detained over seven months (Dkt. No. 1 at 6), making his detention presumptively unreasonable under *Zadvydas*, 533 U.S. at 701. Respondents concede this point in their briefing, acknowledging that Petitioner has been detained "post-final order of removal for a total of approximately 226 days" from the time of their briefing. (Dkt. No. 11 at 9.)

Second, Petitioner has shown his removal is not reasonably foreseeable. Respondents have failed to deport Petitioner for over seven months, since Petitioner was ordered removed on May 28, 2025. (Dkt. No. 1 at 6.) Though Petitioner was granted a withholding of removal

prohibiting his removal to Türkiye, Respondents did not take *any* necessary steps toward third country removal until December 19, 2025, six days *after* Petitioner filed his petition for habeas corpus. (Dkt. Nos. 1 at 1; 12 at 2–3.) In other words, Respondents kept Petitioner in detention past the 90-day removal period with no plan for removal and initiated some type of action only after Petitioner sought assistance from this Court. Furthermore, there has been no indication from the consulates of Costa Rica, Panama, or Australia that they are likely to accept Petitioner into their country. Thus, the Court finds Petitioner has met his burden, offering sufficient evidence to show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

          2. <u>Respondents have failed to rebut Petitioner's showing</u>

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Id.* Respondents fail to adequately address Petitioner's claim that he has been detained in violation of the Fifth Amendment. (*See* Dkt. No. 11 at 9–13.) Their sole factual assertion—that ICE is "lawfully pursuing Petitioner's removal to third countries"—is deficient. (*Id.* at 9.) They have received no response from the three countries they requested removal to, and they provide no evidence of follow-up communication, alternative efforts, a projected timeline, or any other plausible strategy for effecting removal. This approach falls short of Respondents' burden under *Zadvydas* to present credible evidence of removability.

Because there is not a significant likelihood of removal in the reasonably foreseeable future, Petitioner's detention is no longer permitted under *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.") Petitioner's detention is unlawful, and his release is appropriate. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771,

at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

### B. Petitioner's Third Country Removal Claims

Petitioner's other claims for relief challenge the legality his removal to a third country under the Fifth Amendment, the Eighth Amendment, the Convention Against Torture, the Administrative Procedure Act, and the relevant implementing regulations. (Dkt. No. 1 at 16–18.) The record establishes Respondents are actively seeking to remove Petitioner to a third country. Petitioner's challenge is therefore ripe.

Respondents contend the Court may not grant relief because Petitioner is a member of the plaintiff class in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 2025 WL 942948, at *1 (D. Mass. Mar. 28, 2025). (Dkt. No. 11 at 9–11.) This argument was previously raised in *Nguyen*, 796 F. Supp. 3d at 729–32, and more recently in *Baltodano v. Bondi*, No. 2:25-CV-01958-RSL (W.D. Wash. Nov. 7, 2025) and *Abubaka v. Bondi*, No. 2:25-CV-01889-RSL (W.D. Wash. Nov. 17, 2025). Like the latter cases, the Court adopts the reasoning in *Nguyen*, which held that (1) "[t]he class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal" and (2) absent "clear guidance from the Supreme Court," which the emergency docket order in *D.V.D.* does not provide, this Court must follow well-established precedent. *Nguyen*, 796 F. Supp. 3d at 732.

In *Aden v. Nielsen*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." 409 F. Supp. 3d 998, 1009–11 (W.D. Wash. 2019). Citing both the Due Process Clause and the 8 U.S.C. 1231(b), the court also held that "[g]iving petitioner an opportunity to file a motion to reopen [his removal

proceedings] . . . is not an adequate substitute for the process that is due process in these circumstances." *Id.* Rather, a petitioner must be able to pursue his claim for withholding of deportation in reopened removal proceedings before an immigration judge. *Id.*

Expanding on *Aden*, the *Nguyen* court concluded the requirements set forth in *Aden* "flow directly from binding Ninth Circuit precedent" and held that ICE's current policy on third country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727.

Courts in this district have recently found that due process challenges to ICE's third-country removal policy are likely to succeed on the merits. *See Nguyen*, 796 F. Supp. 3d at 728–729 (finding petitioner was "likely to succeed on his claim that removal to a third country under ICE's current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *Baltodano*, 2025 WL 2987766, at *3 (finding petitioner "likely to succeed on the merits of his claim that he is entitled to 'legally required multistep procedures set out in 8 U.S.C. § 1231(b) and required by due process' before ICE can remove him to a third country"); *J.R. v. Bostock*, No. 2:25-CV-01161-JNW, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025); *Phetsadakone v. Scott*, No. 2:25-CV-01678-JNW, 2025 WL 2579569, at *4 (W.D. Wash. Sept. 5, 2025); *Phaymany v. Nw. Immigr. and Customs Enf't Processing Ctr.*, 2:25-cv-00854-RAJ-MLP (W.D. Wash. Sept. 25, 2025).

Aside from arguing Petitioner is a member of the plaintiff class in *D.V.D.*, Respondents do not substantively challenge Petitioner's third country removal due process claim. (*See* Dkt. No. 11 at 10–12.) Therefore, the Court concludes Petitioner is entitled to advance notice of the proposed country of removal and a meaningful opportunity to challenge that decision in a full

adversarial hearing before an immigration judge under the Due Process Clause. *See Nguyen*, 796 F. Supp. 3d at 729–732.[4]

### III    CONCLUSION

For these reasons, the Court GRANTS the petition for writ of habeas corpus. (Dkt. No. 1.) The Court ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them shall immediately release Petitioner from custody under appropriate conditions of supervision issued under 8 C.F.R. § 241.13(h)(1)–(3).[5]

2. Petitioner shall not be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. § 241.13(i)(1).[6]

3. Respondents are ENJOINED from removing Petitioner to any third country unless they first provide Petitioner with constitutionally and statutorily compliant notice,

---

[4] Petitioner also claims Respondents' third country removal policy is punitive and therefore unconstitutional under *Wong Wing*, 163 U.Sat 236–238. (Dkt. No. 1 at 16–18.) The current record lacks specificity and examples regarding third country imprisonment that were present in *Nguyen*. Therefore, based on the record before it, the Court declines to find Respondents' third country removal policy punitive.

[5] 8 C.F.R. § 241.13 identifies the procedure for releasing noncitizens where there is not a likelihood of removal in the reasonably foreseeable future. Subsection (h)(4) is not included here because the Immigration Court granted withholding of removal and this Court has ordered that removal proceedings be reopened if Respondents intend to remove Plaintiff to a third country.

[6] Subsection (i)(2) is not included here because the Immigration Court granted withholding of removal and this Court has ordered that removal proceedings be reopened if Respondents intend to remove Petitioner to a third country.

and a meaningful opportunity to respond and contest such removal in reopened removal proceedings.

4. Within **TWENTY-FOUR (24)** hours of this order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

The Clerk is directed to close the case and enter judgment.

Dated this 8th day of January, 2026.

David G. Estudillo
United States District Judge